791 F.2d 10
 UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, the
Chase Manhattan Bank, N.A., as Trustee, Sharon Steel
Corporation, Inc., UV Industries, Inc., Liquidating Trust
and David Finkelstein, Arthur R. Gralla, Paul Kolton,
Theodore W. Kheel, Edwin Jacobson and Martin Horowitz, as
Trustees of the UV Industries, Inc., Liquidating Trust, Plaintiffs,
Sharon Steel Corporation, United States Trust Company of New
York, Plaintiffs-Appellees,
v.
EXECUTIVE LIFE INSURANCE CO., Occi & Co., Staniels & Co.,
Translife & Co., Nest & Co., Agway Insurance Company and
First Missouri Bank and Trust Co., on behalf of themselves
and as representatives of a class of former Holders of 9
1/4% Senior Subordinated Notes due April 15, 1987, Mimi
Shapiro, Mortimer A. Shapiro, Pacific & Co., Cede & Co. and
North Star Oil Company, on behalf of themselves and as
representatives of a class of Holders of 9 1/4% Senior
Subordinated Notes Due April 15, 1987, Bucher & Co., William
W. Humphrey, Trustee, and Louis H. Spiner, Trustee, on
behalf of themselves and as representatives of a class of
former Holders of 5 3/8% Subordinated Debentures Due
November 15, 1995, and Bear Stearns & Co., Cede & Co.,
Julian S. Goldberg, Mericka & Co., Mutual Shares Corp. and
Mutual Qualified Income Fund, Saxon & Co., on behalf of
themselves and as representatives of a class of Holders of 5
3/8% Subordinated Debentures Due November 15, 1995, Defendants,
Nest & Co., on behalf of the 9 1/4% Selling Class, Defendant-Appellant,
Mimi Shapiro, Mortimer A. Shapiro, Mutual Shares Corp.,
Mutual Qualified Income Fund, and Bear Stearns &
Co., Defendants-Appellees.
 No. 346, Docket Nos. 85-7543, 85-7559.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 4, 1985.
Decided May 15, 1986.
 
 Michael B. Roitman, Boston, Mass. (Fine & Ambrogne, Boston, Mass., of counsel), for defendant-appellant Nest & Co.
 Stephen Lee Crystal, New York City (Crystal and Driscoll, P.C., New York City, of counsel), for defendants-appellees Mimi Shapiro and Mortimer Shapiro.
 Robert J. Hausen, New York City (Stephen A. Oxman, Shearman & Sterling, New York, of counsel), for plaintiff-appellee Sharon Steel Corp.
 Bernard Cedarbaum, New York City (Carter, Ledyard & Milburn, New York City, of counsel), for plaintiff-appellee U.S. Trust Co. of N.Y.
 Before FRIENDLY,* CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is an appeal from decisions of Judge Edelstein in this federal statutory interpleader action granting summary judgment to one class of claimants, denying summary judgment to another class, 602 F.Supp. 930 (S.D.N.Y.1984), and denying the request of the latter class's representative for attorneys' fees, 602 F.Supp. 942 (S.D.N.Y.1985).
 
 
 2
 This action arose out of Sharon Steel Corporation's ("Sharon") assumption of the liabilities of UV Industries ("UV"), including UV's obligations under certain debentures. See Sharon Steel Corp. v. Chase Manhattan Bank, N.A., 691 F.2d 1039 (2d Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983). Sharon and various trustees for the holders of UV notes brought suit to determine which of two competing classes of holders was entitled to certain interest payments deposited by Sharon with United States Trust Company of New York ("U.S. Trust"), the indenture trustee, pending resolution of this action. With respect to this aspect of the appeal, we affirm the judgment of the district court for reasons stated infra. However, we remand to the district court a request for attorneys' fees made by Nest & Co., the representative of the appellant class.
 
 DISCUSSION
 
 3
 This interpleader action is a contest between two classes of holders of a certain issue of UV debentures, the 9 1/4% Senior Subordinated Notes Due April 15, 1987 (the "Notes"), over the interest on the Notes paid by Sharon to U.S. Trust on April 1, 1980, October 1, 1980, and April 1, 1981 (the "stake"). U.S. Trust refused to distribute these amounts to the then holders of the Notes pursuant to Section 13.03[1] of the U.S. Trust Indenture (the "Indenture"), which prohibited payment of any monies on the Notes in the event of a default in payment of principal or interest on a senior indebtedness. At the time of U.S. Trust's refusal, the trustees of an issue of senior indebtedness (the "Senior Notes") had already issued notices of default on the Senior Notes. If this default triggered Section 13.03, then Section 2.03[2] of the Indenture, which established a mechanism for distributing interest payments on the Notes in the event of a default in payment, was also triggered. That Section provided for the declaration of a special record date for payment of such interest after the cure of the default.
 
 
 4
 On May 5, 1983, the Senior Notes were fully paid. Therefore, the default on the senior indebtedness was cured, and, even under Section 2.03, U.S. Trust was able to disburse the interest payments on the Notes previously deposited by Sharon. Following Section 2.03, U.S. Trust declared a special record date of June 30, 1983 for payment of this accrued interest and, of course, interest on this interest. Under Section 2.03, these payments were to be made to the holders of the Notes as of the special record date (the "Holding Class").
 
 
 5
 The competing class (the "Selling Class"), which consists of those who held the Notes when Sharon deposited the interest payments with U.S. Trust but subsequently transferred them to members of the Holding Class, contends that use of the special record date mechanism was improper. It alleges that the default on the Senior Notes was not the type of default that triggered Section 13.03, and, in turn, Section 2.03. Sharon and U.S. Trust initiated this action to resolve the question of which of the two classes was entitled to payment. Judge Edelstein held for the Holding Class. We agree.
 
 
 6
 The Selling Class contends that because Sharon deposited the interest payments on the Notes with U.S. Trust, it never defaulted in payment, and the special record date provision of Section 2.03 was never triggered. Section 6.01 of the Indenture defines "Event of Default" to include:
 
 
 7
 (a) default in the payment of any instalment [sic] of interest upon any of the Notes as and when the same shall become due and payable, and continuance of such default for a period of 30 days (it being understood that if the entire amount of such payment of interest is deposited by the Company with the Trustee ... before the expiration of such period of 30 days, such default shall no longer be considered to be continuing under this Indenture).
 
 
 8
 Because Sharon deposited the interest payments with U.S. Trust, the Selling Class argues, Sharon avoided default on the Notes, and the interest payments should have been distributed to the then holders, the Selling Class. However, Section 13.03 of the Indenture, supra note 1, prohibits the payment of interest on the Notes during the period of default in payment on any senior indebtedness. Section 13.03 in effect requires a default in the payment of interest on the Notes in the event of a default in payment on senior indebtedness. We held in Sharon Steel Corp. v. Chase Manhattan Bank, N.A., supra, that there was in fact a default on senior indebtedness. This default was caused by Sharon's assuming UV's liabilities without acquiring "all or substantially all" of its assets, in violation of the so-called "successor obligor" clauses of the Senior Notes indenture contract. 691 F.2d at 1051-52. Judge Edelstein held that, since "it is now undisputed that Sharon defaulted on the senior indebtedness, ... under Section 13.03, Sharon was prohibited from paying anything on the U.S. Trust indenture ... [and] the Selling Class [was] 'not entitled to receive' any interest payments." 602 F.Supp. at 937.
 
 
 9
 The Selling Class concedes that there was a default on senior indebtedness but argues that the violation of the successor obligor clause does not amount to a default in payment, as required to trigger Section 13.03. However, the default on the senior indebtedness accelerated all payments on the senior indebtedness thereby resulting in a default in payment. Sharon Steel Corp., 691 F.2d at 1052 ("UV is thus in default on the indentures and the debentures are due and payable."). Hence, there was a default in payment on the senior indebtedness not cured until May 5, 1983 when the senior debt was paid in full. Section 13.03 of the Indenture was thus triggered, and Sharon was required to default in payment on the Notes, thus compelling resort to the special record date provision of Section 2.03. Section 13.03 prohibited Sharon from utilizing the set-aside provision within Section 6.01, see supra, and prohibited U.S. Trust from distributing the deposited sums to the then holders of the Notes. Therefore, the interest payments set aside by Sharon were acquired by the members of the Holding Class along with the Notes themselves. Accordingly, we affirm the district court's grant of summary judgment in favor of the Holding Class.
 
 
 10
 The district court held that only the representatives of the Holding Class would be entitled to recover attorneys' fees and costs. 602 F.Supp. at 940-41. Nest & Co. ("Nest"), representative of the Selling Class, filed a Motion for Partial Reargument (treated by the district court as a motion for modification of judgment), seeking reconsideration of its request for reasonable and necessary attorneys' fees and expenses. The district court denied this motion. 602 F.Supp. 942.
 
 
 11
 Nest asks to be reimbursed either from the stake or directly from Sharon and U.S. Trust. Both the representatives of the Holding Class and Sharon urged affirmance of the district court's decision in their appellate briefs, arguing respectively that only representatives of the prevailing class may recover fees and costs from the fund and that the interpleader plaintiffs should not be charged for bringing an appropriate action. At oral argument, however, counsel for the representatives of the Holding Class informed us of their willingness to allow the payment of fees to Nest out of the fund. Thus, the parties seem to have reached a settlement on this issue. However, this is a class action, and class representatives are not free to enter into a settlement without judicial approval. Fed.R.Civ.P. 23(e). Since an appellate court cannot undertake the proceedings necessary to judicial consideration of the adequacy of such settlement, we remand to the district court for proceedings under Rule 23(e). We perceive no reason for us to address at this time issues of law concerning the payment of fees to a nonprevailing class.
 
 
 12
 Affirmed in part and remanded in part.
 
 
 
 *
 Judge Friendly participated in oral argument in this case and voted before his death on March 11, 1986 in favor of the disposition reached in this opinion
 
 
 [1]
 Section 13.03 of the Indenture provides in pertinent part:
 In case any default shall occur in the payment of principal, whether at the expressed maturity thereof or upon acceleration (including any required sinking fund payments or required prepayments), of, or premium, if any, or interest on, any Senior Indebtedness, then during the continuance of any such default, the Company shall not pay, and neither the Trustee nor any holder of Notes shall be entitled to receive, any amount in respect of the principal of or interest on any Note.
 
 
 [2]
 Section 2.03 of the Indenture provides in pertinent part:
 [I]f and to the extent the Company shall default in the payment of the interest due on such Interest Payment Date, such defaulted interest shall be paid to the Persons in whose names outstanding Notes are registered at the close of business on a subsequent special record date established by notice given by mail by or on behalf of the Company to the holders of Notes not more than 45 days and not less than fifteen days preceding such special record date, such record date to be not less than ten days preceding the date of payment of such defaulted interest....