**Beatrice JONES, on behalf of herself and all similarly situated, Plaintiff,**

v.

**NATIONAL DISTILLERS, et al., Defendants.**

**No. 77 Civ. 3646 CBM.**

United States District Court, S.D. New York.

July 13, 1999.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Having completed distribution to claimants from a securities fraud class action settlement fund, class counsel now move for an order authorizing a charitable donation of the unclaimed class funds to The Legal Aid Society Civil Division. For the reasons given below, the court grants the motion and authorizes the proposed donation.

### I. Background: Creation and Distribution of Settlement Fund

This case began as a class action on behalf of 17,198 shareholders of Almaden Vineyards, Inc., a subsidiary of National Distillers. The case was certified to proceed as a class action by a consent order of this court dated January 6, 1978. On December 7, 1979, the parties reached a stipulation of settlement, which this court approved by a final order and judgment dated February 19, 1980. The settlement created a fund to be divided among all eligible claimants. On June 12, 1980, this court ordered approval of the administrative determinations of Laventhol & Horwath, a certified public accounting firm retained to process, approve, and reject submitted claims.

The settlement fund was distributed to qualified claimants, after payments from the fund to class counsel and to Laventhol & Horwath. Bauer Aff. ¶ 2. A number of the checks mailed to qualified claimants were returned undeliverable or were simply never deposited. *Id.* ¶ 3. Class counsel report that they and Laventhol & Horwath undertook efforts to locate missing class members and to encourage claimants to cash their checks. *Id.* ¶ 3. Although they "did locate a number of those persons," there remains roughly $18,400.80 in the settlement fund for which no claimant could be located. *Id.* ¶ 3. They assert that "[t]here is nothing further that can be done, on an economical basis, to either locate the claimants or encourage them to cash their checks." Pl.'s Mem. at 2

Class counsel propose a charitable donation of the remaining $18,400.80 in class funds to The Legal Aid Society Civil Division. Bauer Aff. ¶ 4. The Legal Aid Society describes itself as a "private non-profit law firm[ ] dedicated to eliminating injustice by extending equal protection of the law and providing free, quality legal services to those who cannot afford an attorney." *Id.*, Ex. at 10. Both a full-time staff and pro bono volunteers provide their legal services. *Id.*, Ex. at 3–4. The Civil Division, the Society's oldest component, includes units such as "Civil Appeals and Law Reform, Homeless Rights, Immigration, Family Law and Consumer Law." *Id.*, Ex. at 4. It provides "comprehensive legal services" to clients who include "victims of domestic violence, unemployed workers, disabled persons, senior citizens, homeless children and their families, families and individuals facing eviction, indigent immigrants and persons with AIDS." *Id.*, Ex. at 3–4. Only those with incomes below specified limits, based on family size, may be clients. *Id.*, Ex. at 10.

### II. Distribution of Unclaimed Class Funds

The problem of distributing a common fund among class members, some of whom cannot be found, is typical. "Despite best efforts[,] . . . it remains virtually certain—especially when large classes are involved—that not all class members will share in an aggregate class recovery. This situation may or may not result in a residue remaining after individual claim distribution." *Newberg on Class Actions* § 10.14, at 10–36 (3d ed.1992). While class counsel and class fund administrators have a duty to try to find missing class members, they need not continue searching forever for those who have "followed Judge

Crater into the mists of the unknown." *In re Fairbanks,* 135 B.R. 717, 718 (Bankr. D.N.H.1991).[1] After 20 years' wait for class members who could not be found, "the court will have to make a determination about the distribution of the surplus," applying traditional principles to the case context. *Newberg on Class Actions* § 10.15, at 10–38.

### A. Cy Pres or Fluid Recovery Distributions Outside the Class

With 17,198 class members, the postage and administrative costs of distributing $18,400.80 to all qualified claimants would be prohibitive and the amount per recipient would be negligible. Where distribution of class funds to class members is infeasible, courts often use cy pres principles to determine an appropriate use for the funds.

> The cy pres approach ... puts the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class (*aggregate cy pres distribution*). In such an event, the funds are usually paid to a third party ... for designated purposes. Alternatively, ... undistributed class funds may be used for the prospective benefit of individual class members and others similarly situated, e.g., *future class members* who engage in future transactions of the type involved in the class litigation (*price reduction or market distribution*).

*Id.* § 10.17, at 10–41 – 10–42. The Second Circuit has cautioned, however, against a "fluid recovery" scheme that creates a class fund but deviates too much from principled individual damage calculations and pro rata distributions to class members. *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005 (2d Cir.1973), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40

L.Ed.2d 732 (1974), rejected an anticipated distribution to a small fraction of the class and to various non-class recipients because "the amounts payable to individual claimants would be so low as to be negligible." *Id.* at 1017.

■ The Second Circuit has noted, however, that *Eisen* does not forbid all fluid recoveries based on cy pres principles; it only cautions against going to excess in creating class funds that do not meaningfully benefit the class as a whole. *See In re "Agent Orange" Product Liability Litigation,* 818 F.2d 179, 185 (2d Cir.1987) (so distinguishing *Eisen* and approving class settlement distributing significant funds outside the class). Distributing class funds outside the class is permissible where the funds "primarily" benefit class members, *id.,* especially where the non-class distribution is not an initial purpose of the fund, but only an eventual way to dispose of the unclaimed portion, *see, e.g., Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405 (11th Cir.1986) (allowing, in tenant class action, use of unclaimed damages for various improvements to building). More broadly, *Agent Orange* noted that in supervising class funds, "a district court may 'provide[ ] broader relief [in an action that is resolved before trial] than the court could have awarded after a trial.' Indeed, we have previously recognized that some 'fluidity' is permissible in the distribution of settlement proceeds." 818 F.2d at 185 (alteration in original) (citations omitted).

■ Here, the distribution is only of the residue of a fund that was used primarily for a pro rata distribution to all qualified claimants. Distribution of that fund residue outside the class thus is entirely proper, so long as the choice of recipient is appropriate under the circumstances. *See,*

---

**1.** In 1930, Joseph Force Crater, a newly appointed New York State Supreme Court Justice, "stepped into a New York City taxicab and vanished from the face of the Earth.... In all New York history, no one has ever gone more impressively missing." Jay Maeder,

*Missing Person: Joseph Crater, 1930, N.Y. Daily News,* May 5, 1998, at 45. Nine years' wait was sufficient for a declaration of death; Judge Crater never returned to claim his Supreme Court seat and extensive search efforts proved unavailing. *Id.*

e.g., *West Va. v. Chas. Pfizer & Co.*, 314 F.Supp. 710 (S.D.N.Y.1970), *aff'd*, 440 F.2d 1079 (2d Cir.1971) (approving, in antitrust action against pharmaceutical companies, settlement providing that parties could seek court approval to spend unclaimed damages for public health purposes).

### B. Choice of Recipient for Unclaimed Funds

### 1. Reversion to United States Treasury

 Statutory provisions grant District Courts authority to order that funds paid into a United States Court, and remaining unclaimed for five years, will revert to the United States Treasury. 28 U.S.C. §§ 2041, 2042. Although the statutory language seems mandatory, it has been interpreted as a permissive option that "does not limit the discretion of the district court to control the unclaimed portion of a class action judgment fund," but simply "will control when a court so orders or when the court fails to make any disposition of this type of fund." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 735 (2d Cir. 1984). The option may be appropriate in the absence of guidance either from cy pres principles or from the preferences of parties with equitable interests in the funds, but it remains a context-specific, discretionary determination. *See, e.g., Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir.1990) (providing for reversion to United States based on context-specific analysis of the propriety of cy pres distributions and the goals of the statute on which plaintiffs sued); *Houck on behalf of United States v. Folding Carton Admin. Comm.*, 881 F.2d 494 (7th Cir.1989) (providing for reversion to the United States unless, as ultimately happened, the District Court found an appropriate use for the funds based on cy pres). The statute therefore does not preclude this court from considering the propriety of a proposed charitable donation of the unclaimed class funds, as "a court of equity may dispose of funds fairly—without being compelled to utilize §§ 2041 and 2042."

*Van Gemert*, 739 F.2d at 735 ("In short, we refuse to put the legal shackles of §§ 2041 and 2042 on the hands of a court which strives to do equity." *Id.* at 736.).

### 2. Charitable Donation

A frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members. Such a donation may serve the cy pres principle of indirectly benefitting all class members. *See, e.g., In re Three Mile Island Litigation*, 557 F.Supp. 96, 97 (M.D.Pa.1982) (in action based on nuclear reactor accident, settlement of $25 million, with $20 million funding members' claims and $5 million "set aside for a Public Health Fund ... to finance studies of the long term health effects of the ... incident and to further evacuation planning for the future"); *West Va. v. Chas. Pfizer & Co.*, 314 F.Supp. 710 (S.D.N.Y.1970), *aff'd*, 440 F.2d 1079 (2d Cir.1971) (in antitrust action against pharmaceutical companies, settlement providing that parties could seek court approval to spend unclaimed damages for public health purposes).

Cy pres principles offer limited guidance here, however. While there are many worthy uses for $18,400.80, there is no obvious use for the money that provides a particular benefit to class members. The alleged fraud in this action occurred more than twenty years ago—an eternity in the fast-changing world of securities markets. Twenty-two years after their ill-fated investment in Almaden Vineyards stock, it is unclear how many of the claimants remain active stock market investors. Any claimants who have continued to brave the markets after their Almaden Vineyards stock losses have weathered two recessions, the skyrocketing interest rates of the early 1980s, the 1987 stock market crash, and markets injured by countless other frauds. While support for securities fraud research or prevention might benefit all participants in the global economy, the passage of time

has eroded any assumption that it would benefit class members in any meaningfully additional way.

The absence of an obvious cause to support with the funds does not bar a charitable donation, however. "In recent years, the doctrine appears to have become more flexible.... [W]hile use of funds for purposes closely related to their origin is still the best cy pres application, the doctrine of cy pres and courts' broad equitable powers now permit use of funds for other public interest purposes by educational, charitable, and other public service organizations." *Superior Beverage Co. v. Owens–Illinois, Inc.*, 827 F.Supp. 477, 478–79 (N.D.Ill.1993) (collecting cases). *See also Newberg on Class Actions* § 10.24, at 10–60, 10–61 (3d ed. 1992) ("[W]here the parties have not agreed as part of a settlement for the distribution of ... unclaimed balance, the court ... may order the residual monies to be distributed to *a use completely unrelated to the injured class members*, such as to an educational institution, to a recognized charity or public service organization, or to the general treasury of the local or state government." (emphasis added)).

In circumstances similar to those now at issue, courts have approved charitable donations of unclaimed settlement funds to support non-profit provision of pro bono legal services. *See, e.g., Superior Beverage Co. v. Owens–Illinois, Inc.*, 827 F.Supp. 477, 478–79 (N.D.Ill.1993) (approving grants from unclaimed class settlement funds to legal aid bureau, various law school programs, a museum, a public television station, and other charities); *In re Folding Carton Antitrust Litigation*, No. MDL 250, 1991 WL 32867 (N.D.Ill. Mar.6, 1991) (distributing unclaimed antitrust class settlement funds to National Association for Public Interest Law (NAPIL) fellowships unrelated to antitrust law), *aff'd mem. in relevant part*, 934 F.2d 323 (7th Cir.1991); *In re Ocean Shipping Antitrust Litigation*, MDL No. 395 (S.D.N.Y. July 29, 1991) (distributing more than $800,000 in unclaimed funds to NAPIL fellowships); *Illinois v. J.W. Petersen Coal & Oil Co.*, No. 71 C 2548 (N.D.Ill. Mar.15, 1976) (distributing half of unclaimed class funds to each of the Chicago Bar Foundation and the Chicago Lawyers Committee for Civil Rights); *cf. Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, CA No. 71774 SC (E.D.Pa. Feb. 28, 1978) (approximately $25,000 of unclaimed funds to two law schools to establish loan funds for needy students).[2] Accordingly, although there is no clear use for the unclaimed class funds that especially benefits class members, charitable donation remains a proper use of the funds.

### 3. The Legal Aid Society Civil Division as Class Counsel's Chosen Recipient

■ The intent of the settlement fund was to help those claiming injury by civil securities fraud. The Legal Aid Society Civil Division exists for the at least somewhat analogous purpose of helping those needing legal assistance for various civil matters. The tie to the intent of the fund is thin, but not as thin as it would be if the donation served an entirely unconnected cause such as a dance performance or a zoo. The Legal Aid Society Civil Division is an entirely proper recipient of a charitable donation. It is as appropriate a recipient of the unclaimed class funds as any, given both the difficulty of targeting class members with the funds and the history of courts approving donations of unclaimed class funds to the cause of non-profit legal services, *see supra* Part II.B.2.

Additionally, the distribution preference of class counsel is entitled to deference because class counsel are the only entities with a meaningful equitable stake in the remaining class funds. The plaintiffs and defendants received proper notice of the fund and have let the money lie fallow for two decades. During those decades, class counsel expended effort to track down

---

**2.** The two unreported cases are cited in *Superior Beverage Co.*, 827 F.Supp. at 478–79.

missing class members and to file this motion to donate the unclaimed funds. Additional efforts of class counsel, beyond those for which they received payment while the case was active, may entitle class counsel to an equitable stake in unclaimed class funds. *See Wilson v. Southwest Airlines, Inc.,* 880 F.2d 807 (5th Cir.1989). Agreeing with the defendant's objections to a proposed charitable donation of unclaimed class funds, *Wilson* held that with all claimants fully compensated, as the fund intended, the defendant's "equitable claim to any money remaining after the accomplishment of that purpose is compelling." *Id.* at 813. Critically for present purposes, the panel also held that "class counsel have an equitable claim to attorneys' fees for hours reasonably expended in excess of the estimated ... hours in the administration of the consent decree." *Id.* at 815. The panel then approved a split of the funds between the defendant (64.5 percent) and class counsel (35.5 percent). *Id.* at 816.

The size of class counsel's equitable interest in the unclaimed funds is unclear; it is unclear how much time and money they spent beyond what the settlement anticipated. It is clear, however, that they are the only entities with any equitable stake in the unclaimed funds. Even if the propriety of The Legal Aid Society Civil Division as a recipient is limited and the equitable stake of class counsel is limited, together the two considerations are compelling. Class counsel's preference to donate the funds, rather than to claim as large a portion as this court might allow, is entitled to respect, especially where their chosen recipient is a legitimate and reasonably appropriate charity.

III. Conclusion

For the reasons given above, the court grants the motion for an order authorizing a charitable donation of the balance of the class settlement fund to the Legal Aid Society Civil Division. The court finds that class counsel's choice of recipient is appropriate and accordingly approves the proposed donation.