EDITH H. JONES, Chief Judge,
concurring:
I concur in Judge Higginbotham’s able opinion .and in the conclusion that the invocation of cy pres here was an abuse of discretion remediable, under these particular facts, only by a pro rata distribution to subclass A. I write separately, however, to suggest that if the defendant .had not waived its right to request a refund, it would have been entitled to the excess.
As Judge Higginbotham explains, the cy pres doctrine originated in the field of trust law “to save testamentary charitable gifts that would otherwise fail.” In re Airline Ticket Comm’n Antitrust Litig., 307 F.3d '679, 682 (8th Cir.2002). It has been imported into the class action context to distribute unclaimed funds “for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated.” Id. at 682-83. It is inherently dubious to apply a doctrine associated with the voluntary distribution of a gift to the entirely unrelated context of a class action settlement, which a defendant no doubt agrees to as the lesser of various harms confronting it in litigation. See Martin H. Redish et al., Cy Pres Relief & the Pathologies of the Modern Class Action: A Normative and Empirical Analysis, 62 Fla. L.Rev. 617, 621 (2010). See also Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 784 (7th Cir.2004) (Posner, J., describing cy pres in this connection as “badly misnamed.”).
The opportunities for abuse have been repeatedly noted. See, e.g., Securities & Exchange Comm’n v. Bear, Stearns & Co., Inc., 626 F.Supp.2d 402 (S.D.N.Y.2009) (“While courts and the parties may act with the best intentions, the specter of *481 judges and outside entities dealing in the distribution and solicitation of large sums of money creates an appearance of impropriety.”). See In re Pharm. Indust Average Wholesale Price Liti, 588 F.3d 24 at 34 (1st Cir.2009) (cy pres distributions are controversial); Adam Liptak, Doling Out Other People’s Money, N.Y. Times Nov. 26, 2007, at A14 available at http://www. nytimes.com/2007/ll/26/washington/26bar. html (describing particular distributions, “giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful”); Editorial, When Judges Get Generous, Wash. Post, Dec. 17, 2007, at A20, available at http://www. washingtonpost.com/wp-dyn/contenV artiele/2007/12/16/AR2007121601433.html; George G. Krueger & Judd A.- Serotta, Money For Nothing, Legal Times, June 2, 2008; Sam Yospe, Note, Cy Pres Distributions in Class Action Settlements, 2009 Colum. Bus. L.Rev. 1014, 1027-41 (2009); Goutam U. Jois, The Cy Pres Problem and the Role of Damages in Tort Law, 16 Va. J. Soc. Pol’y & L. 258, 259 (2008). Whatever the superficial appeal of cy pres in the class action context may have been, the reality of the practice has undermined it. It is time for courts to rethink the justifications of the practice.
The panel opinion holds that the Rules Enabling Act places an “overarching limitation on class-action litigation” and demands “a narrow construction of Rule 23.” Professor Redish has put the point more bluntly:
Use of cy pres simultaneously violates the constitutional dictates of separation of powers by employing a Federal Rule of Civil Procedure to alter the compensatory enforcement mechanism dictated by the applicable substantive law being enforced in the class action proceeding. It has somehow become common practice among many courts, scholars, and members of the public to view the modern class action as a free-standing device, designed to do justice and police corporate evildoers. As nothing more than a Federal Rule of Civil Procedure, however, the class action device may do no more than enforce existing substantive law as promulgated either by Congress or, in diversity suits, by applicable state statutory or common law. Yet in no instance of which we are aware does the underlying substantive law sought to be enforced in a federal class action direct a violator to pay damages to an uninjured charity.
Redish et al., supra, at 623 (footnote omitted). Cy pres distributions arguably violate the Rules Enabling Act by using a wholly procedural device — the class-action mechanism as prescribed in Rule 23 — to transform substantive law “from a compensatory remedial structure to the equivalent of a civil fine.” Id. They present an Article III problem by transforming “the judicial process from a bilateral private rights adjudicatory model into a trilateral process.” Id. at 641. In addition, such distributions likely violate Article Ill’s standing requirements. Courts should be troubled that a cy pres distribution to an outsider uninvolved in the original litigation may confer standing to intervene in the subsequent proceedings should the distribution somehow go awry.
Whether cy pres distributions violate the Constitution or Rules Enabling Act has not, to my knowledge, been fully litigated in any court,[1] and these questions are neither briefed nor presented for review here. *482 Hence, I refrain from a more rigorous analysis and suggest instead that district courts should avoid the legal complications that assuredly arise when judges award surplus settlement funds to charities and civic organizations.
The preferable alternative, illustrated partially in Wilson v. Southwest Airlines, Inc., 880 F.2d 807 (5th Cir.1989), is to return any excess funds to the defendant.[2] The class action settlement fund in Southwest Airlines retained a balance of over $500,000 after all claimants had been reimbursed in full. Id. at 810. Claims were made against the balance by class counsel for additional claims administration fees and by Southwest for a return of the excess. Id. The district court rejected both claims and ordered a cy pres distribution to a local charity. Shortly thereafter, Southwest and class counsel entered a settlement that would divide the remaining funds between Southwest and the class counsel. Id. at 811. This court reversed the district court’s judgment and approved the settlement. The opinion noted that Southwest “clearly renounced its legal claim to any residual funds” in the settlement agreement and therefore had no “legal right” to the balance. Id. at 812. Neither the plaintiffs nor counsel had a legal right to the balance either. As a result, this court ordered that the fund should be distributed to the party with the stronger equitable claim. Id. That party was the defendant:
Southwest’s equitable claim is premised on the fact that all the money in the fund originally belonged to it. Southwest turned over the money for the specific and limited purpose of compensating the class. It did so in the expectation that compensating the class would exhaust the fund. The record of the fairness hearing reveals that Southwest and class counsel both wrongly assumed that claims alone would amount to $900,000 or more of the fund, exclusive of expenses. Since Southwest turned over its money in the clear and reasonable expectation that the money was required for the specific purpose of compensating the class, its equitable claim to any money remaining after the accomplishment of that purpose is compelling.
Id. at 813.
In the ordinary case, to the extent that something must be done with unclaimed funds, the superior approach is to return leftover settlement funds to the defendant. This corrects the parties’ mutual mistake as to the amount required to satisfy class members’ claims. Other uses of the funds — a pro rata distribution to other class members, an escheat to the government, a bonus to class counsel, and a cy pres distribution — all result in charging the defendant an amount greater than the harm it bargained to settle. Our adversarial system should not effectuate transfers of funds from defendants beyond what they owe to the parties in judgments or settlements.

. At least one court has concluded that "fluid recovery” judgments — which differ materially from cy pres distributions — do not violate the Rules Enabling Act. See Schwab v. Philip Morris USA, Inc., No. CV 04-1945, 2005 WL 3032556 (E.D.N.Y. Nov. 14, 2005).

. This approach, of course, was not available in today's case for reasons explained in the panel opinion.