942 F.2d 1235
 21 Fed.R.Serv.3d 234, 2 NDLR P 61
 ASSOCIATION FOR RETARDED CITIZENS OF NORTH DAKOTA; Lindley
Black, by his father, Sidney Black; Bradley Cossett, by his
mother, Denise Cossett; Richard Schneiderhan, by his mother
and guardian, Elmira Schneiderhan; Naomi Jordison, by her
father, Timothy Jordison; Kelli Moriarty, by her mother and
guardian, Jacquelyn Moriarty; and Phillip Dechant, by his
mother and guardian, Lois Dechant; on behalf of themselves
and all others similarly situated, Appellees,
v.
George A. SINNER, Governor of the State of North Dakota;
Richard Rayl, Director of Institutions; Henry C. Meece,
Jr., Superintendent of the State Developmental Center at
Grafton; the acting Assistant Superintendent of Grafton
State School and Chief Administrative Officer of San Haven
Division; Dr. Robert Wentz, State Health Officer,
Department of Health; Sam Ismir, Director, Division of
Mental Health, Department of Human Services; Sandi Noble,
Director, Division of Developmental Disabilities, Department
of Human Services; Carroll Burchinal, Director of
Department of Vocational Education; Wayne Sanstead,
Superintendent of Public Instruction; Gary Gronberg,
Director of Special Education Division, Department of Public
Instruction; John A. Graham, Director, Department of Human
Services; Gene Hysjulien, Director, Division of Vocational
Rehabilitation, Department of Human Services; and Lee
Smutzler, Director, Office of Field Services and Program
Development, Department of Human Services, Appellants.
 No. 90-5397.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1991.
Decided Aug. 14, 1991.
 
 State Atty. Gen., Nicholos J. Spaeth, argued (James M. Vukelic, on brief), Bismarck, N.D., for appellants.
 Michael J. Williams, argued (Mary Jo Deutsch Schneider, on brief), Fargo, N.D., for appellees.
 Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Appellants are Governor George A. Sinner and other North Dakota state officials (collectively, "the State") who are responsible for administering the State's programs and institutions for the mentally retarded. Appellees are a non-profit corporation and individual mentally retarded persons who commenced this action in 1980 to obtain relief for the mentally retarded residents of two North Dakota state institutions, San Haven and Grafton. The State appeals the district court's latest order denying it Rule 60(b) relief from a permanent injunction further extending the federal court's ten-year supervision over these state functions. We hold that the district court erred in failing to address the State's contention that this latest injunction exceeded the court's Eleventh Amendment jurisdiction as defined in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Accordingly, we reverse.
 
 I.
 
 2
 This litigation has a lengthy procedural history that can be briefly summarized for purposes of this appeal. Appellees initially sought relief from conditions that allegedly violated the Fourteenth Amendment and numerous federal and state laws. Trial ended in May 1982, one month before the Supreme Court decided Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), its first decision dealing with the Fourteenth Amendment rights of involuntarily committed mentally retarded persons. Following trial, the district court entered a permanent injunction containing numerous specific mandates, many of which were explicitly premised upon state law. See Association for Retarded Citizens v. Olson, 561 F.Supp. 473, 494-95 (D.N.D.1982). The State appealed, arguing that the district court's injunction contravened federal law as defined in Youngberg. Without addressing that contention, this court affirmed on the ground that the injunction was justified under state law. See Association for Retarded Citizens v. Olson, 713 F.2d 1384, 1392-1393 (8th Cir.1983).
 
 
 3
 Following that appeal, the district court entered a detailed Implementation Order which governed the State's compliance actions over the subsequent five and one-half years. Meanwhile, in January 1984, the Supreme Court decided Pennhurst, which reversed a broad injunction against a Pennsylvania institution for the mentally retarded on the ground that "federal courts [lack] jurisdiction to enjoin ... state institutions and state officials on the basis of ... state law," 465 U.S. at 124-125, 104 S.Ct. at 920-921. Prior to 1990, however, it does not appear that either the parties or the district court allowed Pennhurst's dramatic change in the governing legal environment to affect these proceedings.
 
 
 4
 On January 15, 1990, the district court issued an order to show cause in which it proposed to enter an order affirming its 1982 permanent injunction with substantial modifications. Among other requirements, the court's proposed order required the State to meet the standards of the Accreditation Council on Services for People with Developmental Disabilities ("ACDD") for care and support of the plaintiff class members, and required ACDD to "furnish to the court evaluations of the services furnished to class members in each of the eight regions established in North Dakota by the Department of Human Services."
 
 
 5
 Both parties filed objections to the court's proposal. The State argued that the district court should terminate the litigation because Pennhurst limited its jurisdiction to federal constitutional and statutory violations that the State had successfully remedied. The State in particular questioned the need for and terms of the proposed ACDD evaluations. Plaintiffs on the other hand objected to any modification of the court's prior orders because, they alleged, the State continued to be guilty of "major violations of constitutional and other legal rights on an individual as well as a systemic level."
 
 
 6
 On March 19, 1990, without discussing the Pennhurst issue, the court issued an order (the "March 19 Order") which "affirmed" its 1982 permanent injunction with the changes previously proposed, ordered the ACDD to conduct the proposed evaluations, and without prior warning ordered the State to expand the Protection and Advocacy Project to 21 professional advocates and two monitors.[1] The relevant operative provisions of that injunction are as follows:
 
 
 7
 1. THE ORDER ISSUED BY THIS COURT DATED AUGUST 31, 1982 IS AFFIRMED AND ISSUED AS A FINAL ORDER HEREIN SUBJECT TO THE FOLLOWING CHANGES:
 
 
 8
 a. REFERENCES IN THAT ORDER TO ACMR/DD SHALL BE INTERPRETED TO INCLUDE ANY PRESENT OR SUCCESSOR ... ORGANIZATION....
 
 
 9
 b. STRIKE PARAGRAPH 6, AND INSERT ... DEFENDANTS ARE PERMANENTLY ENJOINED TO FURNISH A LEVEL OF SERVICES TO THE MEMBERS OF PLAINTIFF CLASS SUFFICIENT TO ENSURE THAT NO PERSON SHALL BE MAINTAINED AT GRAFTON WHO IS QUALIFIED TO RESIDE ELSEWHERE.
 
 
 10
 c. STRIKE PARAGRAPH 7.
 
 
 11
 d. STRIKE PARAGRAPH 9 AND INSERT ... DEFENDANTS ARE PERMANENTLY ENJOINED TO COMPLY WITH ALL TITLE XIX REGULATIONS[2] AND WITH ALL ACDD STANDARDS IN ALL THEIR FACILITIES AND PROGRAMS.
 
 
 12
 e. STRIKE PARAGRAPHS 10, 11 AND 12.
 
 
 13
 2. THE IMPLEMENTATION ORDER OF MARCH 7, 1984 AND ALL AMENDMENTS THERETO ARE HEREBY ABROGATED.
 
 
 14
 3. THE MONITOR SHALL BE TERMINATED EFFECTIVE APRIL 15, 1990....
 
 
 15
 4. THE PROTECTION AND ADVOCACY PROJECT SHALL FORTHWITH BE INCREASED TO 21 PROFESSIONAL ADVOCATES AND 2 MONITORS, AND THE ADDITIONAL BUDGET NECESSARY TO SUPPORT SUCH AN INCREASE SHALL BE MADE AVAILABLE TO THE PROJECT.
 
 
 16
 5. DEFENDANTS SHALL CONTRACT WITH [ACDD] TO SECURE EVALUATIONS OF THE SERVICES FURNISHED TO CLASS MEMBERS IN EACH OF THE EIGHT REGIONS ESTABLISHED BY THE DEPARTMENT OF HUMAN SERVICES TO DETERMINE IF THE CARE AND SUPPORT FURNISHED IN EACH OF THOSE REGIONS MEETS THE STANDARDS OF THE ACDD AND THE DICTATES OF [NORTH DAKOTA LAW].
 
 
 17
 6. THE EVALUATIONS CALLED FOR IN ITEM 5 ABOVE SHALL BE MADE AVAILABLE TO THE COURT ON OR BEFORE NOVEMBER 30, 1990.
 
 
 18
 7. IF, BY DECEMBER 31, 1990, DEFENDANTS ARE ABLE TO SHOW TO THE COURT THAT THE STANDARDS OF THE ACDD AND THE NORTH DAKOTA LAW ARE BEING MET, AND THE PROTECTION AND ADVOCACY PROJECT HAS BEEN STAFFED AND FINANCED AS HEREIN ORDERED, FROM AT LEAST JULY 1, 1990, THIS ACTION WILL BE DISMISSED.
 
 
 19
 8. THE REQUIREMENT THAT THE DEFENDANTS ARE TO MEET THE ACDD STANDARDS AND ARE TO COMPLY WITH STATE LAW SHALL BE A CONTINUING REQUIREMENT ON DEFENDANTS UNLESS AND UNTIL IT IS SHOWN TO THE COURT THAT ANOTHER SET OF STANDARDS IS PREFERABLE.
 
 
 20
 (Emphasis added.)
 
 
 21
 The State did not appeal the March 19 Order. Instead, on April 18, it filed a Motion for Reconsideration, arguing that "the new requirements [in this order] are grounded in state, not federal, law and, therefore, are barred by the eleventh amendment." The district court treated this as a Rule 59(e) motion and denied it as untimely.[3]
 
 
 22
 The State then filed the motion at issue on this appeal, which it captioned as a "Motion Pursuant to Rules 59(e) and 60(b)...." Without holding a hearing or discussing the Pennhurst issue, the district court summarily granted this second motion to reconsider and reaffirmed its March 19 Order. In doing so, the court did not state whether it was proceeding under Rule 59 or Rule 60(b). This appeal followed.
 
 II.
 
 23
 On appeal, the parties debate a host of issues involving the merits of the March 19 Order. However, as is often the case, our appellate task is defined by the procedural posture in which this case reaches us. Therefore, we must first address certain procedural questions.
 
 
 24
 In part, the State characterized its second motion as a Rule 59(e) motion to reconsider the denial of its first motion. Because that first motion was untimely under Rule 59(e), the district court clearly did not abuse its discretion in refusing to grant relief on the State's second motion under Rule 59(e).
 
 
 25
 However, the State also based its second motion on Rule 60(b). Although the filing of a Rule 60(b) motion for relief from a final order does not extend a party's time to appeal the underlying order, the denial of Rule 60(b) relief is appealable. See Fox v. Brewer, 620 F.2d 177 (8th Cir.1980).[4]
 
 
 26
 Rule 60(b) grants a district court discretion to grant relief from a final judgment or order only on the grounds specified in the rule. Here, the State's second motion seeks relief under Rule 60(b)(5), which provides: "upon such terms as are just, the court may relieve a party ... from a final judgment ... [if] the judgment has been satisfied ... or it is no longer equitable that the judgment should have prospective application."
 
 
 27
 It is well settled that a district court retains authority under Rule 60(b)(5) to modify or terminate a continuing, permanent injunction if the injunction has become illegal or changed circumstances have caused it to operate unjustly. See 7 Moore's Federal Practice, p 60.26. Generally, such relief is granted only when "new and unforeseen conditions" cause "extreme and unexpected hardship" so that the "decree is oppressive." United States v. City of Fort Smith, 760 F.2d 231, 233 (8th Cir.1985); Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803, 813 (8th Cir.), cert. denied, 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969). This restrictive standard is lessened in institutional reform litigation, however, both because of the need to shape practical and flexible equitable remedies, and because principles of federalism and comity require that "a federal court's regulatory control ... not extend beyond the time required to remedy the effects of past [constitutional violations]." Board of Educ. v. Dowell, --- U.S. ----, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991).
 
 
 28
 For example, in New York State Ass'n for Retarded Children v. Carey, 706 F.2d 956 (2d Cir.), cert. denied, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983), the state appealed the district court's refusal to modify an injunction imposing restrictions on New York institutions for the mentally retarded. The Second Circuit reversed, in part because Youngberg v. Romeo "has made clear that the court entering the decree interpreted the [constitutional] requirement too broadly," 706 F.2d at 971. See also Plyler v. Evatt, 924 F.2d 1321 (4th Cir.1991). That is precisely the situation here.
 
 
 29
 The district court's 1982 injunction was issued immediately after the Supreme Court's decision in Youngberg v. Romeo and interpreted Youngberg in a manner that seems to conflict in significant respects with subsequent interpretations by other circuits. See P.C. v. McLaughlin, 913 F.2d 1033 (2d Cir.1990); Lelsz v. Kavanagh, 807 F.2d 1243 (5th Cir.1987). Although this court upheld the 1982 injunction, we did so solely on the basis of state law. The Supreme Court in Pennhurst then in effect overruled our affirmance when it held that the district court has no jurisdiction to enforce state law by injunction and, moreover, that the scope of prospective relief under federal law is "constrained by principles of comity and federalism," 465 U.S. at 104 n. 13, 104 S.Ct. at 910 n. 13. Yet, as shown above, numerous provisions of the district court's latest injunction are grounded in state law.
 
 
 30
 In its response to the show cause order, the State argued that Pennhurst requires this action be terminated because the State is now in compliance with all federal constitutional and statutory requirements. In support of its position, the State has offered affidavit evidence that the San Haven institution has been closed; overpopulation at the Grafton facility has been alleviated; the State's funding of programs for the mentally retarded has dramatically increased; the State now qualifies for Title XIX federal funding; the use of physical restraints and medication are carefully supervised by professionals; client abuse is strictly prohibited--in short, that all systemic constitutional violations that may have existed at the start of this litigation have been eliminated. Although appellees have contested some of these assertions, our review of the record suggests that the State has presented a prima facie case of current compliance, particularly under the changed legal environment of Youngberg and Pennhurst.
 
 
 31
 The district court, however, issued its March 19 Order, containing a new permanent injunction, and then denied the State's Rule 60(b) motion, without specifying what violations of federal law presently exist and without responding to the State's argument that Pennhurst bars such relief. Under these circumstances, we conclude that the district court either erred in failing to consider the State's motion as a timely request for Rule 60(b)(5) relief, or abused its discretion in denying Rule 60(b)(5) relief without addressing the state's contention that the March 19 Order is contrary to federal law as construed in Youngberg and the Eleventh Amendment as construed in Pennhurst. Accordingly, we must remand this case to the district court for consideration of the State's Rule 60(b)(5) motion under these controlling constitutional standards.
 
 III.
 
 32
 Normally, "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." Browder v. Director, Dep't of Corrections, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). In this case, however, the district court did not simply deny the State's Rule 60(b) motion; it granted that motion and summarily reaffirmed its March 19 Order. Because this last order must be reversed and remanded for further consideration of the State's Rule 60(b) contentions, the question arises as to the status of the district court's injunction on remand. This question is not governed by the normal rule of Browder, since by the district court's own command, the March 19 Order, which we may not review, has been replaced by the later operative permanent injunction. See St. Mary's Health Center v. Bowen, 821 F.2d 493, 498 (8th Cir.1987).
 
 
 33
 Paragraphs 1, 2 and 3 of the March 19 Order, as reaffirmed by the order under review, continue the 1982 injunction with specified modifications. By its Rule 60(b) motion, the State has placed in issue whether it is now in compliance with federal constitutional and statutory requirements so that this injunction must be dissolved and the case terminated. The State is entitled to consideration of this motion on the merits. That consideration should be made in the first instance by the district court, which has extensive expertise and familiarity with all aspects of this litigation. Pending those proceedings on remand, however, we conclude that paragraphs 1-3 of the injunction, which continue mandates long in place and originally affirmed by this court, should remain in effect.
 
 
 34
 The situation is quite different with respect to paragraphs 4 through 8 of the March 19 Order. These paragraphs contain new mandates and restrictions on the State, entered without reference to Youngberg and Pennhurst standards and in the face of the State's unanswered Eleventh Amendment objections. Accordingly, we conclude that the district court should stay or vacate these paragraphs of the injunction pending the proceedings on remand that we have directed.
 
 IV.
 
 35
 For the above reasons, the order denying the State's motion for Rule 60(b) relief is reversed, and the case is remanded for further proceedings consistent with this opinion. On remand, the district court is directed to consider the merits of the State's Youngberg and Pennhurst contentions, but we do not otherwise limit the discretion of the district court to determine the manner in which it will proceed or the issues it will address. However, if the district court ultimately concludes that some form of permanent injunction should remain in effect, then it must define with specificity (i) what standards of care are mandated by federal law, (ii) the extent to which the State has failed to comply with those mandates, and (iii) the reasons why the class-wide relief it has chosen to grant will "directly address and relate to" those violations of federal law. Milliken v. Bradley, 433 U.S. 267, 282, 97 S.Ct. 2749, 2758, 53 L.Ed.2d 745 (1977).
 
 
 
 [1]
 The Protection and Advocacy Project represents developmentally disabled persons in North Dakota, including class members, and monitors their treatment, education and habilitation plans. The Project also investigates complaints of abuse and seeks remedies for violations of the developmentally disabled's rights. The Project was initially established by executive order in 1977, its composition was ordered by the district court in 1984, and its authority and duties were codified in 1989. Prior to the district court's ordering of the new positions at issue here, the legislature funded 17 professional positions
 
 
 [2]
 The regulations under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., contain standards that public residential facilities must meet to be eligible for federal funding
 
 
 [3]
 Had this motion been timely under Rule 59, it would have extended the State's time to appeal the March 19 Order. See Fed.R.App.Proc. 4(a)(4). The State could also have guarded against the effect of untimeliness by moving to extend its time to appeal under Appellate Rule 4(a)(5). However, it failed to do so
 
 
 [4]
 Technically, because Rule 60(b) applies only to final orders, and because the March 19 Order contemplated further proceedings, there is a question whether the State should have invoked the district court's Rule 60(b) power, or its inherent power to modify an interlocutory order. See 7 Moore's Federal Practice, p 60.20. However, since the district court's refusal to modify its injunction is appealable under 28 U.S.C. § 1292(a)(1) in either case, the distinction does not affect this appeal, except perhaps to caution us not to apply Rule 60(b) narrowly