_____

No. 95-1496
_____

Association for Retarded            *
Citizens of North Dakota;           *
Lindley Black, by his father,       *
Sidney Black; Bradley Cossett,      *
by his mother, Denise Cossett;      *
Richard Schneiderhan, by his        *
mother, Elmira Schneiderhan;        *
Naomi Jordison, by her father,   *
Timothy Jordison; Kelli             *
Moriarty, by her mother,            *
Jacquelyn Moriarty; Phillip         *
Dechant, by his mother, Lois        *
Dechant, on behalf of               *
themselves and all others           *  Appeal from the United States
similarly situated,                 *  District Court for the
                                    *  District of North Dakota.
        Plaintiffs - Appellees,     *
                                    *
        v.                          *
                                    *
Edward T. Schafer, Governor of      *
the State of North Dakota;          *
Charles Mertens; Wanda              *
Kratochvil; Dr. Jon Rice;           *
Sam Ismir; Sandi Noble; Reuben   *
Guenthner; Wayne Sanstead;          *
Gary Gronberg; Henry Wessman;       *
Gene Hysjulien; Yvonne Smith,       *
                                    *
        Defendants - Appellants.    *
                                   _____

            Submitted: October 16, 1995

                 Filed: May 15, 1996
                   _____

Before McMILLIAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                   _____

LOKEN, Circuit Judge.

     This is a class action challenging the State of North Dakota's programs and facilities for the mentally retarded.  The district

court issued a broad permanent injunction in 1982, and we affirmed. Association for Retarded Citizens v. Olson, 561 F. Supp. 473 (D.N.D. 1982), aff'd, 713 F.2d 1384 (8th Cir. 1983). However, in 1991 we held that the Eleventh Amendment as construed in Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984), precludes those portions of the injunction that enforced state law, and we remanded for consideration of whether the State now complies with federal law. Association for Retarded Citizens v. Sinner, 942 F.2d 1235 (8th Cir. 1991). In remanding, we noted:

> [T]he State argue[s] that Pennhurst requires this action be terminated because the State is now in compliance with all federal constitutional and statutory requirements. In support of its position, the State has offered affidavit evidence . . . that all systemic constitutional violations that may have existed at the start of this litigation have been eliminated. Although appellees have contested some of these assertions, our review of the record suggests that the State has presented a prima facie case of current compliance, particularly under the changed legal environment of Youngberg [v. Romeo, 457 U.S. 307 (1982),] and Pennhurst.

942 F.2d at 1240.

On remand, after broadly defining plaintiffs' rights under federal law, the district court appointed a Panel of Special Masters "to receive and evaluate such evidence as the parties present" and to file a report with the court concerning the State's motion to terminate the injunction. After nine months of hearings, the Panel recommended that the injunction be terminated and the case dismissed. The district court adopted the Panel's Report in its entirety and directed entry of judgment dissolving all outstanding injunctive orders. However, the court also awarded plaintiffs substantial costs, attorney's fees, and expert fees for their work in opposing the State's motion to terminate the injunction. The State appeals, contesting $202,335.15 of the amount awarded. Concluding that the contested services were not

reasonably expended by the prevailing party, as required by <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), we reverse.

**I.**

In federal civil rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). There can be no doubt that plaintiffs initially prevailed in this lawsuit. See <u>ARC v. Olson</u>, 713 F.2d at 1395-96, reducing the initial attorney's fee award. The State paid substantial fee awards for the period 1980 through 1992. At issue here are fee requests for 1993-1994, a period following the district court's appointment of the Special Masters Panel. The State has paid $113,835.65 of the amounts requested without objection. It appeals the award of additional claims for $124,405 in attorney's fees and $77,931.15 in costs and expert fees.

The district court granted these requests in full, concluding (i) plaintiffs are still prevailing parties; (ii) the requested attorney's fees are "the product of reasonable hours times a reasonable rate" and "there is no need to adjust the fee"; and (iii) an award of expert fees is expressly authorized by § 1988(c), first enacted in 1991. On appeal, the State argues that plaintiffs are not "prevailing parties" for purposes of this award, and also that the amount of fees awarded is unreasonable.[1] We review an award under fee-shifting statutes for "an abuse of discretion or an

---

[1]The State also raises other issues: that § 1988(c) does not authorize an expert fee award because plaintiffs did not assert or prove claims under 42 U.S.C. § 1981 or § 1981a; that the expert fee award is not authorized under other statutes invoked by plaintiffs, 20 U.S.C. § 1415(e)(4)B, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 <u>et seq.</u>, and 29 U.S.C. § 794; and that the district court retroactively applied § 1988(c), violating <u>Landgraf v. USI Film Prods.</u>, 114 S. Ct. 1483 (1994). Given our view of the case, we need not take up these important issues.

error in implementing the governing legal standards." <u>McDonald v. Armontrout</u>, 860 F.2d 1456, 1458 (8th Cir. 1988).

## II.

Complex civil rights cases seldom end with the grant of a permanent injunction. The injunction must be implemented, that process must be monitored, and lingering or new disputes over interpretation of the decree must often be presented to the court for resolution. These functions take time and effort by the prevailing party's attorney. Therefore, it is generally accepted that prevailing plaintiffs are entitled to post-judgment fee awards for legal services necessary for reasonable monitoring of the decree. <u>See</u> <u>Stewart v. Gates</u>, 987 F.2d 1450, 1452 (9th Cir. 1993); <u>Garrity v. Sununu</u>, 752 F.2d 727, 738 (1st Cir. 1984).[2]

However, not all post-judgment efforts are compensable. First, when "claims distinctly different from the underlying lawsuit" arise after resolution of the main civil rights issues, plaintiffs must prevail on these unrelated claims to be entitled to a fee award for the post-judgment work. <u>Willie M. v. Hunt</u>, 732 F.2d 383, 386 (4th Cir. 1984). Second, compensable post-judgment work must in any event be reasonable and necessary, measured by the <u>Hensley v. Eckerhart</u> standard that requires balancing the amount of effort against plaintiffs' overall success. Like the Tenth Circuit, we reject the notion that fee awards "in a post-decree monitoring setting . . . are immune from the possibility of reduction under the principles of <u>Hensley</u>." <u>Joseph A. v. New Mex. Dept. of Human Servs.</u>, 28 F.3d 1056, 1060 (10th Cir. 1994).

The district court failed to conduct this analysis. True, the court applied the familiar "lodestar" approach and found that the

_____

[2]The Supreme Court noted this principle in <u>Pennsylvania v. Delaware Valley Citizens' Council</u>, 478 U.S. 546, 559 (1986).

-4-

number of hours and the hourly rate submitted by plaintiffs' counsel were reasonable. But the court awarded the full amount requested without analyzing whether plaintiffs' efforts in 1993 and 1994 were reasonable in light of their level of success. See Hensley, 461 U.S. at 438-40. Partial success may justify only a partial fee award. See Farrar v. Hobby, 113 S. Ct. 566, 574-75 (1992); Craik v. Minnesota State Univ. Bd., 738 F.2d 348, 349-50 (8th Cir. 1984).

## III.

We remanded this case in 1991 because some of the relief initially afforded plaintiffs violated the Eleventh Amendment, and because the State had made a prima facie showing that the permanent injunction should now be terminated. On remand, the district court appointed a Panel of Special Masters to consider the State's motion to terminate. This procedure certainly called for reasonable post-judgment monitoring. Plaintiffs could not simply walk away from the Panel's inquiry; the district court expected them to participate. Thus, as in Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990), "plaintiffs' counsel were under clear obligation to make the defensive effort," and in such situations, even largely unsuccessful defensive efforts may be compensable. See also Hatfield v. Hayes, 877 F.2d 717, 720 (8th Cir. 1989).

However, it was up to plaintiffs to define the extent of their participation. Plaintiffs had every reason to know, before the Panel hearings began, the nature of the State's compliance efforts. Plaintiffs could have acknowledged that those efforts appeared to provide full relief and engaged in relatively passive monitoring of the State's compliance evidence to the Panel. Instead, plaintiffs fought the State at every turn, presenting their own slate of opposing experts and examples of alleged class member deprivations. Given the parameters established by our remand order, this was, in

substance, the assertion of new claims for relief.  Those new claims were unsuccessful.

The Panel received evidence from November 1992 to August 1993. Forty-four witnesses testified, including eleven outside experts.  The Panel issued its Report on November 14, 1994.  In recommending that the permanent injunction be terminated and the case dismissed, the Panel concluded:

> In the space of twelve hard years, North Dakota has moved from an embarrassing lack of appropriate attention to its responsibilities to become a forward-looking provider of the most promising methods and mechanisms to benefit those whom it once ignored.  To deny that recognition is to ignore volumes of fact and countless days, months, and years of work, not to mention expense.
>
> * * * * *
>
> The panel has, in its review of the record, studied plaintiffs' assertions of federal rights violations.  The panel has found that the examples presented appear to be relatively isolated, unconnected incidents involving oversight, common errors in judgment, and service inconsistencies between regions.  No willful or knowing acts of abuse, neglect, or deprivation of rights of class members have been left unaddressed.  The State has demonstrated that its system for delivering services to persons with developmental disability no longer has inherent within it violations of the federal constitutional and legal rights of those so disabled.

This was a complete rejection of plaintiffs' position.  Plaintiffs had asserted that the State was not in compliance with federal law.  The Panel disagreed, in essence concluding that plaintiffs had received all the relief to which they were entitled in the lawsuit by the time of our 1991 remand.  Thus, the relative success factor in the Hensley equation suggests that plaintiffs' fee award must be reduced to an amount that would compensate for the limited effort required to engage in relatively passive monitoring of the Panel proceedings.  A prevailing party who aggressively seeks a greater victory and fails is entitled to a proportionally lesser fee award

than a prevailing party who merely defends its victory, even if the defense is less than completely successful.  See Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir. 1988).

We must also consider the other key component of the Hensley equation -- exclusion of "hours that are excessive, redundant, or otherwise unnecessary," 461 U.S. at 434.  The State on appeal has identified numerous examples of seemingly excessive and unnecessary work, such as the time spent by attorneys with billing rates in excess of $100 per hour accompanying experts on facility tours for days on end.  Cf. Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995).  The nature of the Panel proceedings was described in a section of the Panel's fifty-five page final Report entitled "The trouble with experts":

> Each side's counsel [supported] the proposition that its expert was the correct assessor for various reasons:  the other's notes were incomplete, visit too brief, methodology flawed, experience less, education less prestigious, or preparation for the site visit insufficiently detailed or insufficient in scope.  Endless reasons were offered for discrediting the observations of an expert witness from a site visit:  reviewing the Individualized Education Plans of all students in the unit first, as opposed to afterward or not at all; or talking, or not talking, to direct care staff; talking, or not talking, to classroom teachers, or special education directors, or parents, or team members, or assessors, or evaluators, or case managers, or the Qualified Mental Retardation Professional; or not looking at the actual habilitation plans of everyone at the site visited, or at the particular plan of a client interviewed there; or not interviewing any client there; or not reviewing all, or specific, work plans or training programs for clients at a day work activity; or not comparing a client's plans through time to note progress or lack thereof and whether the plan adjusts according to the circumstances; or not tracking quarterly utilization reviews of service plans.

Perhaps all this effort would have been compensable had plaintiffs persuaded the Panel or the district court that the State continues

to violate federal law.  But it was overkill in light of the State's persuasive evidence that the time had come to end the litigation.  This necessitates a reduced fee award, because in compensating post-judgment monitoring, we must avoid creating a framework in which "the decree institutionalizes the attorney, as well as the system."  Brewster v. Dukakis, 786 F.2d 16, 18 (1st Cir. 1986).

We therefore conclude that the district court's fee award cannot stand.  Normally, when a fee award must be reduced, we remand for calculation of an appropriate fee, as the Supreme Court did in Hensley.  But there is no need for that in this case.  Plaintiffs have been paid for all their post-judgment monitoring in 1992, when the Panel was appointed and began its hearings, plus an additional $113,000 for services in 1993 and 1994.  Even if plaintiffs are entitled to a reasonable expert fee,[3] we conclude that they have been fully compensated for their reasonable and necessary post-judgment efforts following our 1991 remand.

For the foregoing reasons, that portion of the district court's judgment awarding plaintiffs attorney's fees, expert fees, and costs in the amount of $202,335.15 is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The district court did not discuss and plaintiffs have made no attempt to explain why their experts were necessary for reasonable post-judgment monitoring.