# United States Court of Appeals

### FOR THE EIGHTH CIRCUIT

_____

No. 96-3870

_____

Chinyere Jenkins, by her next     *
friend, Joi Jenkins; Nicholas     *
Paul Winchester-Rabelier, by     *
his next friend, Paula     *
Winchester; Margo Vaughn-Bey,     *
by her next friend, Franklin     *
Vaughn-Bey; Nicholas C. Light,     *
by his next friend, Marian     *
Light; Stephon D. Jackson, by     *
his next friend, B. J. Jones;     *
Travis N. Peter, by his next     *
friend, Debora Chadd-Peter;     *   Appeal from the United States
Leland Guess, by his next     *   District Court for the
friend, Sharon Guess,     *   Western District of Missouri.
    *
        Plaintiffs - Appellants,     *
    *
American Federation of     *
Teachers, Local 691,     *
    *
        Intervenor below,     *
    *
        v.     *
    *
State of Missouri; Mel     *
Carnahan, Governor of the State     *
of Missouri; Bob Holden,     *
Treasurer of the State of     *
Missouri; Missouri State Board     *
of Education; Peter Herschend,     *
Member of the Missouri State     *
Board of Education; Thomas R.     *
Davis, Member of the Missouri     *
State Board of Education;     *
Robert E. Bartman, Commissioner     *
of Education of the State of     *
Missouri; Gary D. Cunningham,     *

Member of the Missouri State     *
Board of Education; Rice Pete    *
Burns, Member of the Missouri  *
State Board of Education;      *
Sharon M. Williams, Member of  *
the Missouri State Board of    *
Education; Betty Preston,      *
Member of the Missouri State   *
Board of Education; Jacquelline  *
Wellington, Member of the     *
Missouri State Board of       *
Education; Russell Thompson,   *
Member of the Missouri State   *
Board of Education,         *
                            *

     Defendants - Appellees,   *
                            *

School District of Kansas City;  *
Dr. Henry D. Williams,       *
Superintendent thereof; Terry  *
M. Riley, Member of the Board  *
of Directors; Lance         *
Loewenstein, Member of the    *
Board of Directors; Marilyn   *
Simmons, Member of the Board of  *
Directors; Sandy Aguire Mayer,  *
Member of the Board of       *
Directors; John A. Rios, Member  *
of the Board of Directors;    *
Darwin Curls, Member of the   *
Board of Directors; Patricia   *
Kurtz, Member of the Board of  *
Directors; Edward J. Newsome,  *
Member of the Board of       *
Directors; Dr. Julia H. Hill,  *
Member of the Board of       *
Directors; John W. Still,    *
Member of the Board of       *
Directors, *
                            *

     Defendants.          *

_____

Submitted: March 17, 1997

Filed: May 22, 1997
_____

-2-

Before McMILLIAN, HEANEY, and JOHN R. GIBSON, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.

The plaintiffs in the Kansas City school desegregation case appeal the district court's order denying them an award of attorneys' fees for their participation in the proceedings in the Supreme Court that culminated in <u>Missouri v. Jenkins</u>, 115 S. Ct. 2038 (1995) (<u>Jenkins III</u>).  The district court denied fees on the theory that, since the Supreme Court decided <u>Jenkins III</u> against the Jenkins class, the Jenkins class could not be considered the "prevailing party" within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (West Supp. 1997).[1] We reverse.

The Jenkins class argues that its status as "prevailing party" was established when it won the determination that the State had violated the Constitution and was obliged to remedy the unconstitutional conditions it had created.  Thereafter, the class representatives were obliged to defend the remedy they had won and entitled to fees for doing so.  They argue that the purpose of section 1988 requires that they be compensated for efforts necessary to defend the remedy, without constant  reevaluation of

_____

[1] 42 U.S.C.A. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . . (footnote omitted).

their entitlement to fees, depending on whether they win every controversy that arises.

It is generally true that status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way. "Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the [Equal Access to Justice Act]--like other fee-shifting statutes--favors treating a case as an inclusive whole, rather than as atomized line items." Commissioner, INS v. Jean, 496 U.S. 154, 161-62 (1990) (citing section 1988 case, among others). This is true of matters decided after judgment on the merits, as well as those decided before. See id.

Naturally, reversal on appeal of the merits can change a prevailing party into a non-prevailing party, and require that earlier fee awards be vacated. See Pottgen v. Missouri State High Sch. Activities Ass'n, 103 F.3d 720, 724 (8th Cir. 1997); Pedigo v. P.A.M. Transp., Inc., 98 F.3d 396, 398 (8th Cir. 1996). Jenkins III did not affect in any way the holding that the State had committed constitutional violations or that it was obliged to remedy those violations. In fact, Jenkins III only reversed orders providing quality education programs for the year 1992-93, 115 S. Ct. at 2045, and salary increases ordered in 1992 and 1993, id. These orders represent a small fraction of the relief that has been ordered in this case. The State can hardly dispute the substantiality of the remedy ordered by the district court and sustained in numerous appeals, since the State described the remedy as "massive", "unprecedented", and "astounding" in its brief before the Supreme Court.

-4-

Even though the actual holding of <u>Jenkins III</u> is limited to reversing the orders before it, the State argues that <u>Jenkins III</u> has ramifications that must affect the case as a whole, either resulting in a finding of unitariness or at least circumscribing the scope of the entire remedy.[2] Regardless of the effect of <u>Jenkins III</u> on the future progress of this case, it does not retroactively take away the Jenkins class's status as prevailing party in the underlying case. In <u>Balark v. City of Chicago</u>, 81 F.3d 658 (7th Cir.), <u>cert. denied</u>, 117 S. Ct. 507 (1996), the Seventh Circuit rejected an argument that plaintiffs who enjoyed a consent decree for ten years were deprived of prevailing party status when their decree was dissolved under Fed. Rule Civ. P. 60(b). <u>Balark</u> queried:

> How can one say that the plaintiffs did not prevail when their decree governed the parties' behavior for ten years, and the termination is prospective only? The only possible perspective from which the entitlement to fees can be considered is at the time the final judgment determining who prevails is entered (taking into account any appeals . . .).

<u>Id.</u> at 665. Like the <u>Balark</u> plaintiffs, the Jenkins class has enjoyed the benefits of prevailing in this litigation for more than a decade. <u>Jenkins III</u> did not void the many remedial orders issued in this case that have never been reversed "during the process of a direct appeal." See <u>Balark</u>, 81 F.3d at 663. There can be no serious doubt that the Jenkins class is still the prevailing party in the case as a whole.

---

[2]After briefing in this appeal was complete, the district court determined that the KCMSD had attained unitariness in only one of the five aspects enumerated in <u>Green v. County School Board</u>, 391 U.S. 430, 435 (1968). <u>Jenkins v. Missouri</u>, No. 77-0420-CV-W-RGC, slip op. at 28-37, 59 (W.D. Mo. Mar. 25, 1997). The Jenkins class has filed a notice of appeal from that part of the district court's order approving a settlement between the State and KCMSD.

Jean stated that status as the "prevailing party" is only the beginning of the fees inquiry, since the "prevailing party" requirement is "a generous formulation that brings the plaintiff only across the statutory threshold." Jean, 496 U.S. at 160-61 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Joseph A. v. New Mexico Dep't of Human Serv., 28 F.3d 1056, 1060 (10th Cir. 1994). Once over that threshold, important questions still remain about whether fees should be awarded for matters on which the plaintiff lost. See Foster v. Board of Sch. Comm'rs, 810 F.2d 1021, 1024 (11th Cir.) (per curiam), cert. denied, 484 U.S. 829 (1987).

Hensley v. Eckerhart, 461 U.S. 424 (1983), gives the paradigm for determining whether fees are compensable under section 1988 in cases in which the plaintiff has prevailed on some, but not all, of his claims. If any issues on which the plaintiff lost are unrelated to those on which he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded. See id. at 434-35. If, however, the claims on which the plaintiff lost are related to those on which he won, the court may award a reasonable fee. See id. The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole. See id. at 436; Farrar v. Hobby, 506 U.S. 103, 114 (1992). If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on matters on which he did not win. See Hensley, 461 U.S. at 435. If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained. See id. at 440. Finally, of course, any fees must be "reasonably expended," so that services that were redundant, inefficient, or simply unnecessary are not compensable. See id. at 434.

Hensley itself did not address the treatment of fees incurred after judgment on the merits, but we nevertheless apply its principles in such cases. See Association for Retarded Citizens v. Schafer, 83 F.3d 1008, 1010-12 (8th Cir.), cert. denied, 117 S. Ct. 482 (1996). However, it is more complicated to assess the relations of each part of the litigation to the whole in cases that proceed over an indefinite time than in a simple action that comes to judgment and ends. Reimbursement for post-judgment litigation fees can be as important as reimbursement for pre-judgment fees in accomplishing the purpose of section 1988. In suits for long-term injunctive relief, such as institutional reform cases and school desegregation cases, the remedy can unfold in phases over many years.

A plaintiff's attorney may engage in several kinds of post-judgment activity. Some types of post-judgment activities are readily seen to be necessary adjuncts to the initial litigation, whereas other types of activities are more like a new, separate lawsuit and require a fee determination independent of the underlying case. Thus, monitoring the defendant's compliance with court orders and enforcing the remedy are generally compensable as part of the underlying case. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 559 (1986)(various monitoring and enforcement activities, including work before administrative agencies that could have adversely affected rights under consent decree); ARC, 83 F.3d at 1010-11; Duran v. Carruthers, 885 F.2d 1492 (10th Cir. 1989)(monitoring). We have also stressed the importance of allowing the plaintiff in such cases fees for successfully defending the remedy against attacks. In Jenkins v. Missouri, 967 F.2d 1248 (8th Cir. 1992)(Jenkins Fees IV), we said:

> [G]iven the special nature of desegregation cases, withholding
> from the plaintiffs the means for paying

their attorneys could be devastating to the national policy of enforcing civil rights laws through the use of private attorneys general. School desegregation cases can continue for years and affect nearly everyone in the community in one way or another. Various interventions and collateral attacks are not only predictable, but inevitable in litigation affecting so many people in so many different capacities. Furthermore, a school desegregation case differs from much other litigation in that the main action does not result in a monetary recovery that might enable plaintiffs to finance a defense against collateral attacks on their judgments. The only monetary award received by the plaintiffs in a desegregation case is simply payment of their attorneys' fees, and it is inequitable to require the attorney for the class to defend against collateral attacks on the award. Such service is just as much a part of the representation of the plaintiff class as obtaining relief in the first instance. To deny plaintiffs fees in a desegregation case would be to deny them the means to respond to attacks on the remedy.

Id. at 1251.

Where, however, the plaintiff asks for remedial measures that are ultimately denied, he cannot be said to be "defending" the remedy, because the thing he sought has been declared not to be part of the remedy. Assuming the plaintiff can still be characterized as the prevailing party in the case as a whole, the question arises whether he is entitled to fees despite his failure on the particular matter, and if so, whether the fees should be reduced to reflect his lack of success. Under Hensley the first inquiry is whether the issues in the post-judgment litigation are inextricably intertwined with those on which the plaintiff prevails in the underlying suit or whether they are distinct. The Fourth Circuit has applied this distinction to deny fees in civil rights cases where the parties entered a consent decree and further litigation concerned contractual issues under the consent decree, not the underlying civil rights claim. See Willie M. v. Hunt, 732

F.2d 383, 386 (4th Cir. 1984). In <u>Arvinger v. Mayor of Baltimore</u>, 31 F.3d 196 (4th Cir. 1994), the Fourth Circuit summarized its cases on this issue:

> Thus, when subsequent litigation seeks to enforce or interpret a settlement agreement or consent decree, involving facts and principles different from those considered in the underlying litigation, the second is not considered "inextricably intermingled" with the first. On the other hand, a subsequent litigation initiated against the successful party to modify or "replay" the issues of the first litigation may be so intermingled. <u>Plyler [v. Evatt</u>, 902 F.2d 273 (4th Cir. 1990)] applies to carry forward prevailing party status only in this latter circumstance, and only that when the plaintiffs are forced to litigate to preserve the relief originally obtained.

<u>Id.</u> at 202. We applied this distinction in <u>Schafer</u>, where we held that the plaintiffs' post-judgment activities were so much greater than would have been necessary for monitoring the decree that they amounted to the assertion of distinct, new claims for relief, which could not be compensated on the strength of the plaintiffs' prevailing party status in the underlying suit. 83 F.3d at 1011.

If, on the other hand, the plaintiff's claim in the post-judgment litigation is inextricably intertwined with the underlying claims, then we must determine what fee award, if any, would be reasonable. <u>See</u> <u>Farrar</u>, 506 U.S. at 115 ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."). Assessing the reasonableness of a fee requires us to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity.

The most critical factor in the fixing of a reasonable fee is the overall success obtained.  See id. at 114.  We must therefore determine the relationship the post-judgment litigation bears to the case as a whole, rather than assessing the plaintiff's success on the particular question in isolation.  See Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir. 1990).  The outcome of disputes about the scope of the remedy can greatly reduce the magnitude of relief obtained in the case as a whole; changes in the scope of the remedy  may not change a prevailing party into a non-prevailing party, but they certainly can change the overall significance of the plaintiff's victory.

Even if the issue on which the plaintiff lost is minor in the context of a substantial victory, to be compensable, post-judgment work must be "useful and of a type ordinarily necessary", Delaware Valley, 478 U.S. at 561 (quotation marks omitted), to secure the result obtained in the underlying litigation.  See Schafer, 83 F.3d at 1012.  The courts have not interpreted this requirement tautologically, to mean that any unsuccessful efforts were perforce unnecessary, but rather have asked whether the plaintiff's attorneys would have been expected or obliged to take the position they took.  See Plyler, 902 F.2d at 281 (awarding fees to counsel who were under clear obligation to defend remedy, though they lost on issue in question).  For instance, in People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1314 (7th Cir. 1996), the Seventh Circuit reversed the district court's denial of fees for a certain appeal.  The district court had refused to award fees because the appeal had been dismissed.  The Seventh Circuit stated:

> A court's focus should not be limited to the success/failure of each of the attorney's actions.  Rather, it should be upon whether those actions were reasonable.  In other words, the court should not look to whether F & H 'won' the 1990 appeal, but should instead

> look to whether the fees F & H requests for that appeal were
> reasonably incurred.

Id. at 1314. The Fourth Circuit stated that the court should consider whether the position the fee applicant unsuccessfully advocated was "essential to the preservation of the integrity of the consent decree as a whole." Plyler, 902 F.2d at 281.

Nevertheless, success or failure on the particular matter in question (as opposed to overall success) is still a factor in deciding the reasonableness of the attorney's efforts. See Schafer, 83 F.3d at 1012; Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir. 1988)("Since the reasonableness of a fee is a function in part of the success achieved by the expenditure, lack of success . . . is certainly material in deciding how large the reimbursement should be."); Stewart v. Gates, 987 F.2d 1450, 1454 (9th Cir. 1993) (plaintiffs not entitled to fee award for unsuccessful defense of section 1988 fee award on appeal).

Making success on the particular matter relevant but not determinative to the reasonableness of the fee fits well with our observations in Jenkins Fees IV, 967 F.2d at 1251, about the importance of providing post-judgment fees to assure enforcement of civil rights awards. If the plaintiffs' attorneys in extended civil rights cases must succeed on every matter they litigate, they are likely to be less vigorous in their representation of the class. The Ninth Circuit rejected an argument that section 1988 only permits fees for phases of the litigation in which the plaintiff won:

> Lawsuits usually involve many reasonably disputed issues and a
> lawyer who takes on only those battles he is certain of winning
> is probably not serving his client vigorously enough; losing is
> part of winning. The County

> would have us scalpel out attorney's fees for every set- back, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991). Awarding fees that were reasonably incurred, though perhaps they did not lead to a success in court, is more likely to result in responsible management of the remedial phase of desegregation suits.

Another factor that has been considered in deciding whether post-judgment fees were necessary and useful is whether the attorneys' activity was defensive, seeking to preserve relief obtained earlier, or offensive, seeking to augment what had already been approved. In Ustrak v. Fairman, the Seventh Circuit distinguished between a case in which the fee applicant unsuccessfully defends an appeal of relief he had won below and a case in which the fee applicant unsuccessfully appeals, seeking to expand his victory. 851 F.2d at 990. The Seventh Circuit concluded that it would be more likely to award fees in the former case than in the latter. We have referred to this case with approval in Schafer, 83 F.3d at 1012, and denied a fee where the prevailing party was seeking a greater victory, rather than defending the remedy.

Applying Hensley to this case therefore requires us to decide first if the issues litigated were related to those on which the class prevailed. Two kinds of orders were at issue in Jenkins III, the orders instituting salary increases, see 115 S. Ct. at 2045, and the order requiring the State to continue funding quality education programs despite the State's contention that the KCMSD had achieved partial unitary status with respect to those programs.

-12-

See id. Both matters had been decided in the class's favor in the district court and in this court, and the class was defending the orders against the State's petition for certiorari.

The State's certiorari petition raised issues that were integrally related to the underlying case. The Supreme Court summed up the nature of the State's arguments: "In short, the State has challenged the scope of the District Court's remedial authority." Id. at 2048. Although we have pointed out that the actual holding of Jenkins III only affected a very limited portion of the relief that has been ordered in this case since its inception, the scope of the arguments in Jenkins III was not so limited. The State mounted a challenge to remedial theories that were fundamental to the district court's remedial approach.

Though we have decided that the Jenkins III litigation was integrally related to the underlying case, it is still necessary to determine what fee would be reasonable in light of the Jenkins class's success in the case as a whole; the necessity and usefulness of the class's participation in the Jenkins III proceedings in the Supreme Court; and the cost-effectiveness of counsel's efforts. The Jenkins class asks us to remand the matter to the district court to award fees. However, we have in the past awarded fees in this court under section 1988 for appellate work. See Campbell v. Cauthron, 623 F.2d 503, 509 (8th Cir. 1980); Ustrak, 851 F.2d at 990. We think the matter may be more efficiently disposed of if the parties file the request for fees and any objection thereto directly with this court. Accordingly, the Jenkins class shall file its fee request with supporting affidavits within thirty days of this order, and the State shall file its response within ten days of the Jenkins class's filing.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.